## Muncy v. Commonwealth.

(Decided April 21, 1933.)

622

L. D. LEWIS, WM. DIXON, Jr., J. M. MUNCY and C. W. HOS-KINS for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Arthur Muncy, a deputy sheriff of Leslie county, was jointly indicted with Ed Brock, Thee Brock, and Jerry Brock by the grand jury of Leslie county, charged with the willful murder of Wilk Sparks.

On appellant's separate trial, he was convicted of manslaughter and his punishment fixed at two years in the state penitentiary.

His motion and grounds for a new trial having been overruled, he appeals, relying upon the following grounds for reversal: (1) The court erred in instructing the jury and (2) the verdict is flagrantly against the evidence.

The homicide occurred on the morning of January 27, 1932, on the public highway near the appellant's home and also that of the deceased, but a short distance beyond.

According to appellant's testimony, he had received information a short while before the shooting in evidence that the decedent was unlawfully engaged in operating a still nearby and, on the day the decedent was killed, the appellant had deputized his co-defendants to assist him in raiding the still, when he, with his deputies, upon making an early morning visit, found the decedent, Wilk Sparks, his brother, Joe Sparks, and three companions, Rufus, Silas, and Thee Brock, at the moonshine still, whom they arrested. Wilk Sparks, whose pistol was taken from him when arrested, managed to escape from the officers, but his companions were by appellant and his codefendants started on their way to Hyden.

The evidence is undisputed that the deceased, Wilk Sparks, after escaping the officers' arrest of him at the still site, by his flight, hurriedly went to his home, about a mile distant, where he procured another pistol and also a rifle and thus armed started back to overtake the officers and his arrested companions, who were then being taken to Hyden, and did overtake them as they stopped along the highway a short distance from appellant's home, where, it appears, he had momentarily halted and called to his daughter, Laura Muncy, to bring him his overcoat.

When bringing the coat to him, she informed the appellant that she had just seen the deceased, Wilk Sparks, armed with a rifle, a short distance up the road, coming towards them.

Appellant, upon being thus informed, drew his gun and awaited Sparks' coming and the discovery of his purpose in so returning.

The evidence as to their meeting is somewhat conflicting as to who of the two, appellant or deceased, first drew his gun upon or fired at the other. It is substantially alike to the effect that the deceased, after coming within a few feet of the appellant and his party of deputies and prisoners, stopped in the road, when he was hailed by the appellant, who asked him, "Wilk, do you mean any trouble?" who answered, "No." The appellant then stepped towards him and demanded that he give him the gun or rifle he carried in his hand, which he took from him and then told him to, "Come on now, let's go to town. Get in front, let's go to Hyden." To this command of arrest, the deceased replied, according to some of the witnesses, "Wait and let's talk awhile," or, according to defense witnesses, he said, "No by God, I am going no damn place," and jumped back, and grabbed his pistol and pointed it at Muncy, when Muncy drew his gun on him and they both fired. Joe Sparks, commonwealth witness, testifies as to this that deceased said, "Wait and let's talk awhile," as appellant stepped behind him, when he too stepped back, when appellant threw his gun on him and fired, when he, Wilk, did not have his pistol out or on appellant.

The appellant testifies that he was unable to say which of the pistols fired first, upon this encounter, but

thought both fired about the same time; stating that when the deceased drew his pistol, he hollered to him not to do that, but, seeing that he was going to shoot, he fired to save himself.

Both the appellant and the deceased emptied their guns at each other at short range, when Sparks was shot and killed.

The appellant's defense was that he attempted to place the deceased under arrest, when the deceased resisted arrest, making it necessary for him to shoot him in his own self-defense.

It is the contention of the commonwealth that this defense is not available, for the reason, it contends, the appellant was not a deputy sheriff at the time he killed the decedent.

While the evidence shows that the appellant had, for some time before the homicide, been acting as a deputy sheriff of Leslie county, the commonwealth contends that he had been discharged by the sheriff as such officer a few days before the homicide occurred.

In support of this contention, the sheriff was introduced as a witness, who testified as follows:

"Q. Tell the jury what you told him about whether he was a sheriff any more and what you told him to do about stills? A. Well, he asked me if anybody had to be sworn in after the first of the year, said he didn't want to violate the law, said he had a few papers and he wouldn't execute them, that they had been some fellows had said that a fellow had to be sworn in after the first, I told him some people said that and I didn't know, and he said he wanted to give me up the papers that he was not a Deputy Sheriff, and I said under all circumstances I will have to discharge you Arthur.

"Q. After you told him you would have to discharge him, what else did you tell him about whether he could go hunt up a still. A. He had some papers he had worked on a little up there and served them and got some more out at the same time.

"Civil papers. A. Yes sir, I told him to execute them papers and I couldn't let him work any

longer, he said he would go ahead and get the summons.''

Section 4560, Kentucky Statutes, provides in part as follows:

"Every sheriff may, by and with the approval of the county court, appoint his own deputies, and may revoke the appointment at his pleasure."

Also, in the case of Poague v. Culver, 15 Ky. (5 Litt.) 132, the court held that under this section a deputy may be removed at any time by the sheriff, it being unnecessary to obtain the consent of the county court for his discharge.

Thus, it may be conceded that the sheriff had ample authority, at his pleasure, to discharge the appellant as his deputy, but we do not interpret the sheriff's testimony here given as indicating that he exercised such authority, with which he was admittedly vested, or that he had ever notified the appellant that he was discharged. On the contrary, his testimony is that as the appellant, his deputy, "had some papers he had worked on a little up there and served them and got some more out at the same time," that he, the sheriff, had told him "to execute them papers and I couldn't let him work any longer, he said he would go ahead and get the summons." Appellant denies that he was either discharged or that anything was said by the sheriff about discharging him as his deputy. Manifestly, this statement by the sheriff of his action clearly indicates that he did not, upon this interview had with the appellant, discharge him from his office as deputy sheriff, but expressly told him to go on, or continue, further acting as deputy, by serving certain papers, when thereafter he would have to discharge him.

The evidence thus shows the appellant to have been justified in his contention that he was acting as a deputy sheriff on the morning of the homicide, when he raided decedent's still and arrested his companions, and when he later, upon the decedent's overtaking the appellant and his officers, attempted to rearrest him, but was met with such resistance by the deceased that it became necessary, he alleges, in his own self-defense, to shoot and kill him.

Appellant's first complaint made is to instruction No. 5, as given, which is as follows:

"The court instructs the jury if you shall believe from the evidence in this case that the witness Sim Morris, Sheriff of Leslie County, Kentucky, told the defendant, Arthur Muncy, that he, the said Arthur Muncy was discharged as a deputy Sheriff of Leslie County, Kentucky, then the said Arthur Muncy, had no right as an officer to arrest or command the arrest of the deceased, Wilk Sparks, or to disarm him or to accost him in any way except in self defense, if he did so do; but if you shall believe from the evidence in this case that the said Sim Morris, did not discharge the said Arthur Muncy as deputy Sheriff of Leslie County Kentucky, and the said Arthur Muncy was a deputy sheriff was acting as such under the appointment you have heard read to you, then the said Arthur Muncy, as such deputy Sheriff of Leslie County, Kentucky, had the right and it was his duty under the law to arrest any one committing an offense in his presence, with or without a warrant, and if you shall believe that the deceased Wilk Sparks had committed an offense in the presence of the said Arthur Muncy, then the said Arthur Muncy had a right to command an arrest of the deceased and if you shall believe from the evidence that the said Wilk Sparks had committed an offense in the said Arthur Muncy's presence at the time and place of the killing or before and escaped the arrest from the defendant and the said Arthur Muncy had commanded the arrest of the deceased, and that the deceased resisted that arrest with force and the defendant attempted to consummate the arrest, then he had a right to meet force and use such force as was reasonably necessary to accomplish the arrest, even to the taking of the life of the deceased if such was necessary, and if you shall believe from the evidence that the killing of the deceased resulted as herein defined then you ought to acquit the defendant upon the grounds of enforcement of his official duty; but, unless you shall believe, the defendant cannot avail himself of the defense as an officer in the discharge of his duty."

The appellant severely criticizes this instruction as given upon the grounds that it violates the inhibition of the well-settled rule against giving undue prominence to particular facts in evidence and also complains that

it, while intended to constitute what is termed an "officer's instruction," was improperly and erroneously limited and qualified, with the result that he was thereby prejudiced in his right, he insists, upon the facts heard in evidence, to have given in his defense an unqualified "officer's instruction."

Considering appellant's first complaint here made of the instruction, we are of the opinion that the same is without merit, even while conceding the general rule to be that an instruction should not single out, or give undue prominence to any particular facts in evidence, but that no particular facts in evidence should be stated in the instruction, except so far as required to illustrate or furnish a basis upon which to rest and apply the legal principles involved.

The violation of this rule, well recognized by this court, has been uniformly condemned by it. Smith v. Commonwealth, 122 Ky. 444, 91 S. W. 1130, 29 Ky. Law Rep. 17; Williams v. Commonwealth, 9 Bush, 274; Hobson, Blain & Caldwell's Instructions to Juries, sec. 661; Chilton v. Commonwealth, 170 Ky. 491, 186 S. W. 191, Ann. Cas. 1918B, 851.

We do not, however, regard this criticism of the given instruction as tenable, as coming within the inhibition against overemphasizing particular evidence, for the reason that the direction of the jury's attention to certain evidence, respecting the appellant's alleged discharge as an officer, was here made, not by way of either stressing its importance or offering suggestions as to its credibility, but rather referred to it by way of submitting an instruction based thereon upon the issue as to whether or not the appellant was, at the time of the occasion in evidence, an officer acting in the line of his duty in attempting the arrest of the decedent.

However, appellant's second complaint as to this instruction No. 5 as given presents a more serious question and one which we are of the opinion is meritorious.

The commonwealth's claim that the appellant was not, at the time of attempting the arrest of the decedent upon this occasion, a deputy sheriff of Leslie county for the reason that he is alleged to have been, previously thereto, discharged by the sheriff as such officer, is not supported but in fact is contradicted by the testimony of the sheriff as hereinabove set out.

628

From this, our conclusion, it follows that the appellant's complaint that he was prejudiced in his substantial right, as an arresting officer, by the trial court's giving only a qualified and limited "officer's instruction" as adequately covering the theory of his defense, should be sustained.

On another trial, the court will, in addition to the other instructions given and not complained of, give in lieu of this qualified "officer's instruction" No. 5 the regular unqualified and approved "officer's instruction."

The appellant also insists that the verdict is flagrantly against the evidence, but in view of the conclusion that we have herein reached, that the case will have to be reversed for the reasons hereinabove stated, we deem it unnecessary to now consider and decide this assignment of error.

Judgment reversed, and the case remanded for proceedings consistent with this opinion.